James WHATLEY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0810–CR–934.

Court of Appeals of Indiana.

June 17, 2009.

Transfer Denied Aug. 19, 2009.

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code 35–42–1–1 (Supp.2006) (subsequently amended by Pub.L. No. 1–2007 § 230

**OPINION**

BROWN, Judge.

James Whatley appeals his conviction for murder.[1] Whatley raises two issues, which we restate as:

> I. Whether the trial court's admission of testimony that Whatley had been using drugs and visited Relax Inn to deliver drugs constituted fundamental error; and
>
> II. Whether the evidence is sufficient to sustain his conviction.

We affirm.

The facts most favorable to Whatley's conviction follow. Whatley and his girlfriend Debra Bigham periodically visited Relax Inn in Indianapolis—together or separately—to use or obtain drugs. Bigham visited the motel occasionally for prostitution and to acquire drugs. Whatley would "trail" girls to "[t]ry to see what they be about. If they prostitutes or whatever" in the area around Relax Inn. State's Exhibit 21 at 9. On at least several occasions, Bharat Patel, the owner and manager of the Relax Inn, ordered Whatley or Bigham to leave the motel's premises.

In the early morning hours of August 22, 2007, Whatley and Bigham were at Relax Inn. Bigham had been awake for three days because she had been "smoking crack cocaine throughout that time." Transcript at 99. Whatley had been awake for five days "with no naps in-between." *Id.* at 98–99. Ciera Pedrey, who had been "turning tricks" that evening, was walking around the motel and "decided to hang out" with Whatley and Bigham, who had narcotics. *Id.* at 77. At some point, Whatley and the two women left the motel to pick up drugs. Bigham

(eff.Mar.30, 2007)).

drove Whatley's vehicle because Whatley "had been awake for a considerable amount of time" and was "in no shape to even drive a car." *Id.* at 78, 99. After obtaining the drugs, Whatley, Bigham, and Pedrey returned to the motel to deliver crack cocaine. After arriving at the motel, Bigham parked Whatley's vehicle in the parking area on the backside of the motel and waited in the vehicle as Whatley entered one of the rooms on the second floor of the motel to deliver drugs. Because he had been using cocaine and had been awake for five days, Whatley fell asleep in the motel room where he delivered the crack cocaine. After about ten minutes of waiting, Bigham grew impatient that Whatley had not yet returned and honked the horn of Whatley's vehicle.

While Bigham and Pedrey were waiting for Whatley to return, Patel came out of the motel, approached Bigham and Pedrey with a flashlight, and ordered them to leave the motel's premises. *Id.* at 102. While Bigham was trying to explain that she wanted to wait to pick up her friend before leaving, Patel picked up a rock and threw it at Bigham. Bigham drove Whatley's vehicle to the front of the motel, where Pedrey got out of the vehicle, leaving the car door open in case she had to run back, and started walking toward the motel in an attempt to go get Whatley. However, before Pedrey could make it to the motel, Patel threw a beer bottle at Pedrey and chased her back to the vehicle, where Patel struck the hood and the windshield of the vehicle with his flashlight. Patel then called the Indianapolis Metropolitan Police Department ("IMPD").

When Bigham heard Patel called the police, she backed out of the motel parking lot and drove to a gas station about three blocks away from the motel. While at the gas station, Bigham called Whatley using a payphone and explained that Patel had attacked her. Also during the phone call, Whatley and Bigham made arrangements to meet in the parking lot of a drive-in theatre located directly adjacent to the motel parking lot.

In the meantime, Patel went to the second floor balcony of Relax Inn to visit other motel residents. As Patel was knocking on the door of one of the motel rooms, Whatley emerged from the motel room he was visiting. Whatley walked up to Patel and struck him, knocking Patel against the concrete portion of the balcony's railing and to the ground.

After he struck Patel, Whatley walked down the stairway and ran to the parking lot of the drive-in theatre to meet Bigham and Pedrey as they had arranged. Whatley opened the door to the driver's seat of the vehicle and told Bigham "Get up. Get in the passenger's seat. Come on. We've got to go." *Id.* at 86. He was sweaty and out of breath, "like an adrenaline rush." *Id.* at 106. After Bigham moved into the passenger seat and Whatley got in the driver's seat, Whatley said: "Baby, you don't have to worry about it no more. He's not ... he's not going to f— with you no more." *Id.* at 86. Whatley also told Bigham that Patel "will never mess with" or attack Bigham again. *Id.* at 120. Whatley then told Bigham and Pedrey to go check on Patel. Although Bigham wanted to leave, Whatley insisted that Bigham and Pedrey go back to the motel to check on Patel. The women went up an exterior stairway connecting the motel's first and second floors and found Patel lying motionless on the second-floor balcony near the stairway. Bigham shook Patel's leg and said: "Hey, wake up. Are you okay?" *Id.* at 86.

As Bigham and Pedrey were checking on Patel, IMPD Officer Conrad Simpson arrived at Relax Inn in response to Patel's call. As Officer Simpson approached the

backside of the motel, Bigham and Pedrey were descending the exterior stairway. The women explained to Officer Simpson that a man was lying on the upper balcony of the motel and that the man needed help. Officer Simpson went up the stairway and found Patel lying on his back. Upon examination, Officer Simpson determined that Patel was breathing, but unresponsive. Patel had a laceration on the back of his head, blood and other fluids were coming out of his ear, and his hands were clinched around a set of keys and shaking. Also, a cordless phone and a flashlight were near Patel on the balcony floor. Patel's blood was found on three parts of the flashlight—the lens, the handle, and the strap.

After giving their statements to police, Bigham and Pedrey were permitted to leave. After leaving the motel, the two women met Whatley, and Whatley told Bigham that he had struck Patel in the head two times with his fist. Patel died at the hospital approximately one month later. An autopsy revealed that Patel's death was caused by "a blunt force injury with associated skull fracture and then associated injury to the brain." *Id.* at 174.

The State charged Whatley with murder in the death of Patel. While in the Marion County Jail, Whatley was housed in the same section as Lonnie Carson, another inmate. Whatley regularly shared information about his case with Carson. Specifically, Whatley told Carson that there were three female witnesses against him. Whatley told Carson that he struck Patel in the head with a hammer. Whatley also told Carson that he was concerned about a footprint he left at the scene, but that he burned the shoes he was wearing at that time. Whatley asked Carson if he would be interested in making the three female witnesses "disappear." *Id.* at 258–259.

A jury found Whatley guilty of murder. The trial court sentenced Whatley to an enhanced term of sixty years after finding Whatley's prior criminal history and drug use to be aggravating circumstances and finding no mitigating circumstances.

## I.

The first issue is whether the trial court's admission of testimony that Whatley had been using drugs and visited Relax Inn to deliver drugs constituted fundamental error. Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Noojin v. State*, 730 N.E.2d 672, 676 (Ind. 2000). Whatley, however, failed to object to the admission of the testimony at issue here. Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error. *Cutter v. State*, 725 N.E.2d 401, 406 (Ind. 2000), *reh'g denied.* Whatley argues that the admission of the testimony was fundamental error. To rise to the level of fundamental error, an error "must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Maul v. State*, 731 N.E.2d 438, 440 (Ind. 2000). "The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible." *Boatright v. State*, 759 N.E.2d 1038, 1042 (Ind.2001).

On appeal, Whatley challenges Bigham's testimony that she had driven Whatley to Relax Inn to deliver crack cocaine and that Whatley had been using crack cocaine for five days. Whatley argues that this testimony was evidence of uncharged misconduct, which should have been excluded un-

der Ind. Evidence Rules 404(b)[2] and 403.[3]

■■■ The standard for assessing the admissibility of Rule 404(b) evidence is: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. *Boone v. State*, 728 N.E.2d 135, 137–138 (Ind.2000), *reh'g denied; Hicks v. State*, 690 N.E.2d 215, 221 (Ind.1997). The evidence is inadmissible when the State offers it only to produce the "forbidden inference" that the defendant has engaged in other, uncharged misconduct and the charged conduct was in conformity with the uncharged misconduct. *Crain v. State*, 736 N.E.2d 1223, 1235 (Ind.2000). The trial court has wide latitude, however, in weighing the probative value of the evidence against the possible prejudice of its admission. *Id.* If evidence has some purpose besides behavior in conformity with a character trait and the balancing test is favorable, the trial court can elect to admit the evidence. *Boone*, 728 N.E.2d at 138. For instance, evidence which is necessary for the jury to understand the relationships between the victim, various witnesses, and the defendant may be admissible. *See Wilson v. State*, 765 N.E.2d 1265, 1270–1271 (Ind.2002).

Here, the challenged evidence was not introduced to show Whatley's propensity to engage in crime or that his behavior was in conformity with a character trait. With respect to Whatley's drug use, Bigham's testimony explained why Whatley was awake for five days and, consequently, why Bigham needed to drive Whatley's vehicle and why she was waiting in the driver's seat of Whatley's car when Patel ordered her to leave the motel property. Bigham's testimony regarding Whatley's drug use also explained why Whatley fell asleep in a motel room and did not respond to Bigham honking the horn of his vehicle. Further, Pedrey was "hanging out" with Whatley and Bigham because they had narcotics.

With respect to Whatley's delivery of drugs to Relax Inn, the evidence explained why Whatley was visiting Relax Inn where Patel was the manager and explained the circumstances of Patel's altercations with Bigham and Pedrey, which ultimately led to Whatley's attack on Patel. Specifically, the testimony explained that Patel first confronted Bigham and Pedrey as they waited for Whatley to deliver drugs to one of the motel's rooms and that Patel again confronted Bigham and Pedrey when they attempted to retrieve Whatley from the motel. After Bigham told Whatley about these initial altercations with Patel, Whatley approached and struck Patel at the motel and then told Bigham that Patel "will never mess with" her again. Transcript at 120. Bigham's testimony that Whatley was delivering drugs to the motel and the altercations with Patel that followed, especially when considered together with the previous instances in which Patel

---

**2.** Ind. Evidence Rule 404(b) provides in part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

**3.** Ind. Evidence Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

ordered Whatley and Bigham to leave the motel property, explained the context of the altercations involving Patel and any motive Whatley may have had to harm Patel.

Because the evidence of Whatley's drug use and Whatley's delivery of drugs to Relax Inn was necessary for the jury to understand the relationships between Whatley, Patel, and the other witnesses and the context of the arguments and events which culminated in Patel's death, we find that the admission of Bigham's testimony did not violate Rule 404(b).[4] Similarly, we cannot say that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See, e.g., Wilson,* 765 N.E.2d at 1270–1271 (evidence of defendant's drug dealing and prostitution-related activities was admissible in murder prosecution and did not violate Rule 404(b) or Rule 403 where the evidence was "necessary for the jury to understand the relationships between the victim, various witnesses, and the defendant"); *Ross v. State,* 676 N.E.2d 339, 346 (Ind.1996) (prior misconduct was "admissible because it demonstrated the defendant's motive and intent to commit the murder and illuminated the relationship between the defendant and victim"). We conclude that the admission of Bigham's testimony regarding Whatley's drug use or delivery of drugs to Relax Inn did not constitute fundamental error.

## II.

 The next issue is whether the evidence is sufficient to sustain Whatley's conviction. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

The State was required to prove that Whatley "knowingly or intentionally kill[ed]" Patel. Ind.Code § 35–42–1–1. Whatley appears to argue that the evidence was insufficient because: (A) the "incredible dubiosity" rule applies; (B) Bigham and Carson were not credible; and (C) Whatley did not possess the requisite intent. We will address each argument separately.

### A. *Incredible Dubiosity*

 Whatley argues the "incredible dubiosity" rule is applicable. "Under the incredible dubiosity rule, a court will impinge upon the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Murray v. State,* 761 N.E.2d 406, 408 (Ind.2002). Application of this rule is limited to cases where a single witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of guilt. *Whedon v. State,* 765 N.E.2d 1276, 1278 (Ind.2002). "Application of this rule is rare and the

---

4. In fact, Whatley appears to acknowledge that his "use of cocaine was an integral part of the story . . ." of the morning of August 22, 2007. Appellant's Reply Brief at 3.

standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love v. State*, 761 N.E.2d 806, 810 (Ind.2002).

Whatley fails to argue or show that the testimony of a single witness was inherently contradictory. Instead, Whatley argues that the testimony of several witnesses conflicts with the testimony of other witnesses. Specifically, Whatley points out that Bigham testified that Whatley admitted that he had struck Patel two times in the head with his fist; Carson testified that Whatley admitted that he had struck Patel one time in the head with a hammer; and another witness testified that she saw a man strike Patel one time with either his fist or an object. However, this is an issue of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this court. *Whited v. State*, 645 N.E.2d 1138, 1141 (Ind.Ct.App. 1995). Whatley merely asks that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146. Therefore, we conclude that the incredible dubiosity rule is not applicable. *See, e.g., Berry v. State*, 703 N.E.2d 154, 160 (Ind.1998) (holding that the incredible dubiosity rule was inapplicable where the defendant argued that the testimony of the State's witnesses contained inconsistencies among their statements and not that any one individual witness contradicted himself).

**B. *Credibility of Bigham and Carson***

Whatley appears to argue that Bigham and Carson were not credible because they were hoping for leniency from the State. Specifically, Whatley argues that Bigham was not credible because "she was hoping to receive consideration on a pending probation violation case" in exchange for her testimony against Whatley.

Appellant's Brief at 5. Similarly, Whatley argues Carson was not credible because "he was hoping to obtain a sentence modification ... in consideration for his trial testimony." *Id.* at 5. If there is an existing agreement between the State and one of its witnesses, a prosecutor has a duty to reveal it. *See Rubalcada v. State*, 731 N.E.2d 1015, 1024 (Ind.2000) ("A prosecutor must disclose to the jury any agreement made with the State's witness, such as promises, grants of immunity, or reward offered in return for testimony."). The purpose of this rule is to assist the jury in assessing the witness's credibility. *See McCorker v. State*, 797 N.E.2d 257, 266 (Ind.2003). On the other hand, the State is not required to disclose a witness's hope of leniency. *See Seketa v. State*, 817 N.E.2d 690, 693–694 (Ind.Ct.App.2004) (the State is not required to disclose a situation where "a witness testifies favorably in the hope of leniency, and the State neither confirms nor denies leniency to the witness").

Here, the State disclosed to the jury the extent to which it had any agreements with its witnesses. During its direct examination of Bigham, the prosecutor disclosed to the jury that, in connection with Bigham's probation violation case, the State would not contest the fact that Bigham cooperated with the State in its investigation of Whatley and in Whatley's trial. Also, during its direct examination of Carson, the prosecutor disclosed to the jury that Carson may request a modification of his sentence based on the fact that he testified at Whatley's trial. In addition, Whatley's counsel cross-examined both Bigham and Carson before the jury regarding any agreement with the State or hope for leniency they may have had. Therefore, the jury was able to assess the credibility of Bigham and Carson in light of the fact that they expected or hoped to

receive leniency in exchange for their testimony against Whatley. Whatley's arguments regarding why Bigham or Carson should not be believed amount to an invitation that we reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146.

Whatley also appears to argue that Bigham was not credible because she initially told police that she and Pedrey had been dropped off at the motel by a friend and that she did not know what had happened to Patel. However, the jury was made aware of Bigham's initial statement to police. Bigham testified: "Yeah. We [Bigham and Pedrey] was paranoid. Yes. We was scared to death. We had to hurry up and come up with something so we could leave." Transcript at 117. Whatley's attorney also questioned Bigham about her initial statement to police during cross-examination. The jury was able to determine the extent to which the integrity of Bigham's testimony was affected by the fact that she initially lied to police. *See Edwards v. State*, 753 N.E.2d 618, 622–623 (Ind.2001) (because a witness's proposed alteration of his testimony "was put squarely before the jury, the jury had the ability perform its role as a trier of fact and determine the extent to which it affected the integrity of [the witness's] testimony"). Whatley again asks us to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146.

C. *Intent*

■■■ Whatley argues that involuntary manslaughter is the only charge which is supported by the evidence because he did not have the requisite intent for murder. Specifically, Whatley argues that the evidence does not support the jury's finding that he knowingly killed Patel because he struck Patel only one time.[5]

■■■■ In order to prove that Whatley committed murder, the State was required to show that Whatley "knowingly or intentionally kill[ed]" Patel. *See* I.C. § 35–42–1–1. The intent to commit murder may be inferred from the nature of the attack and the circumstances surrounding the crime. *Pilarski v. State*, 635 N.E.2d 166, 169 (Ind. 1994); *Nunn v. State*, 601 N.E.2d 334, 339 (Ind.1992). It is within the province of the jury to draw an inference of knowledge or intent from the facts presented. *Gibson v. State*, 515 N.E.2d 492, 496 (Ind.1987).

The jury was instructed on murder and on the lesser included offense of involuntary manslaughter. The jury determined from the facts presented to it that Whatley was guilty of murder. According to the evidence, Whatley struck Patel with a hammer or two times with his fist. At the time that Whatley struck Patel, Patel did not have his arms up and was not in a defensive posture. Whatley told Bigham that Patel was "not going to f— with [her] no more," and that Patel "will never mess with [Bigham] and never attack [her] again." Transcript at 86, 120. The pathologist who performed an autopsy testified that Patel died from "blunt force injury with associated skull fracture and then associated injury to the brain." *Id.* at 174.

---

**5.** Whatley cites *Nunn v. State*, 601 N.E.2d 334, 338–339 (Ind.1992), in support of his argument. In *Nunn*, the Court stated that "an intent to kill may be inferred from a single blow." 601 N.E.2d at 339. However, the Court concluded that there was insufficient evidence to support a conviction for murder where the defendant struck the victim once with his hands causing an unusual injury, a severed vertebral artery. *Id.* at 338–339. Here, in contrast to *Nunn*, the State presented evidence that Whatley struck Patel with a hammer or two times with his fist. Also, in contrast to *Nunn*, the injuries suffered by Patel—a skull fracture and impact brain contusions—were not uncommon for the kind of force used by Whatley. **(Tr. at 175–176)**

The pathologist also testified that "a significant amount of force" was required to produce the fracture to Patel's skull and the impact contusions to Patel's brain. *Id.* at 174–175. Patel's blood was found on three different parts of the flashlight, including the lens, the handle, and the strap. DNA analysis revealed that another individual's blood was commingled with Patel's blood on certain portions of the flashlight, but the analysis did not provide a positive identification of that individual. Given the facts of the case, we conclude that the State presented evidence of probative value from which a reasonable trier of fact could have found Whatley guilty beyond a reasonable doubt of murder. *See, e.g., Williams v. State,* 749 N.E.2d 1139, 1141 (Ind.2001) (jury could infer defendant knowingly killed victim where State presented evidence of a vicious blow to the head with a hard object and the injury was not uncommon for that kind of impact); *see also Pilarski,* 635 N.E.2d at 172 (jury was permitted to make an inference of defendant's intent to kill where defendant struck child victim in the head at least two times); *Gibson,* 515 N.E.2d at 496–97 (jury could reasonably infer defendant was aware that the force he used was sufficient to cause serious injury); *Hulen v. State,* 274 Ind. 695, 697–698, 413 N.E.2d 907, 909 (Ind.1980) (defendant's deliberate attack upon an unarmed victim was evidence upon which a jury could base a decision that the defendant knowingly killed the victim).

For the foregoing reasons, we affirm Whatley's conviction for murder.

Affirmed.

CRONE, J. and BRADFORD, J. concur.