## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 14 2016, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Neil L. Weisman
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Miguel I. Sanchez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 14, 2016

Court of Appeals Case No.
71A05-1601-CR-175

Appeal from the St. Joseph
Superior Court

The Honorable John M.
Marnocha, Judge

Trial Court Cause No.
71D02-1509-F5-193

**Altice, Judge.**

**Case Summary**

Following a jury trial, Miguel I. Sanchez was convicted of dealing in methamphetamine by manufacturing, a Level 5 felony. On appeal, Sanchez argues that the evidence was insufficient to support the jury's determination that he was manufacturing methamphetamine.

We affirm.

## Facts & Procedural History

Donna McAbee rented Room 230 at the Mishawaka Inn to engage in prostitution and get high. On the morning of September 3, 2015, Jacklyn Bell went to McAbee's room. Several people were in the room when Bell arrived. Bell felt that there were too many people in the room, so she stepped outside to smoke a cigarette. While outside, Bell encountered Sanchez. Bell had known Sanchez since she was twelve years old and considered Sanchez to be "one of [her] best friends." *Transcript* at 130. She asked Sanchez if he had any "dope," which she explained was a reference to "meth." *Id*. at 132. Sanchez told her "[n]ot yet" but that he was "almost done." *Id*. at 132-33. Bell, who had been addicted to methamphetamine for eight years and had been exposed to the manufacturing process multiple times, understood Sanchez's comments to mean that "he was in the process of working, making it. And it would be done soon." *Id*. at 133. At that time, Sanchez was carrying a black bag.

[4] Bell and Sanchez then went to McAbee's room where Sanchez showed Bell a Smart Water bottle in his bag that "looked like it was almost done."[1] *Id*. at 134. Bell had not seen the Smart Water bottle before Sanchez showed it to her and she did not bring it to the room.

[5] Bell went to the restroom and hung her blue purse and jean jacket on the inside of the bathroom door. While still in the bathroom, Bell heard the police knock on the door to the room. It became chaotic inside as everyone scattered. Bell, who was scared because of an outstanding warrant, jumped in the shower to hide from police. Sanchez then entered the bathroom and flushed the toilet.

[6] Officer Brian Costa of the Mishawaka Police Department had been dispatched to the motel on a report of a domestic disturbance and his investigation led him to Room 230. From the hallway, Officer Costa could hear voices inside Room 230. After he knocked and identified himself as a police officer, the commotion inside the room grew louder and more panicked. Officer Costa heard the sound of a patio door or a window slamming open and then heard the toilet flush. Just as the officers went to make entry into the room, McAbee opened the door. Officer Costa observed a male dive out the window, so he entered the room and proceeded to the window. Officer Costa overheard that a second individual had jumped out the window and as he looked out, he saw a male and a female fleeing through an open field behind the motel.

---

[1] Another individual in the room was also manufacturing methamphetamine.

[7] Officer Costa then turned his attention to the occupants of the room. Sanchez and Bell were located in the bathroom and brought out into the main room. Officer Costa observed a "greenish" backpack that was unzipped and open on a table near the opened window. *Transcript* at 40. Inside the backpack was a two-liter bottle with a rubber hose coming from the lid, which Officer Costa knew from his training to be something used in the manufacture of methamphetamine. Officer Costa observed a second bottle sitting on the table near the backpack that contained an unknown liquid. Believing that there was a possible methamphetamine lab present, Officer Costa evacuated the second floor of the motel.

[8] During a subsequent search of Room 230, Sergeant Brandon McBrier, an officer with the Indiana State Police clandestine team, located in the bathroom a glass smoking pipe, a bottle of sodium hydroxide, and a couple of syringes. Near the corner of the bathtub he found a blue purse with a Smart Water bottle that served as the vessel for an active, one-pot methamphetamine lab laying on top of an open area of the purse and across the purse straps. A wallet with Bell's identification card was found inside the bag. Bell testified at trial that the Smart Water bottle was not in her purse when she hung it up on the back of the bathroom door. She identified the Smart Water bottle as the bottle Sanchez had previously shown her when he indicated he was making methamphetamine.

[9] In addition to the items located in the bathroom, Sergeant McBrier also discovered several trash bags inside the entrance to the room that contained

three used syringes, corner cut plastic baggies, and the remnants of stripped lithium batteries. In the bedroom the officers recovered three corner-cut and tied baggies containing a white powdery substance inside a make-up bag, a cold pack, a loaded syringe, a butane tank, pseudoephedrine blister packs, and a gallon-size plastic baggie containing paper towels.

[10] On September 4, 2015, the State charged Sanchez with Count I, dealing in methamphetamine as a Level 5 felony, and Count II, maintaining a common nuisance, a Level 6 felony. Prior to trial, the State moved to dismiss Count II. A two-day jury trial commenced on December 1, 2015. At trial, Bell and McAbee both testified that Sanchez brought the Smart Water bottle that contained an active methamphetamine lab to Room 230. At the conclusion of the evidence, the State made the decision to withdraw its tendered final jury instruction on accomplice liability and thus, submitted the case to the jury on the sole theory that Sanchez acted as a principal. The jury found Sanchez guilty as charged. The trial court sentenced Sanchez to six years imprisonment and ordered the sentence to be served consecutively to the sentence imposed under another cause. Sanchez now appeals his conviction.

## Discussion & Decision

[11] On appeal, Sanchez argues that the State failed to present sufficient evidence to support his conviction. When reviewing a challenge to the sufficiency of the evidence, we do not reweigh evidence or judge the credibility of witnesses. *Duncan v. State*, 23 N.E.3d 805, 812 (Ind. Ct. App. 2014), *trans. denied*. Instead,

we consider only the evidence and the reasonable inferences supporting the verdict. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. *Id.*

[12] Sanchez concedes that the State presented sufficient evidence to prove that methamphetamine was being manufactured. Sanchez's argument is that the evidence was insufficient to prove that he was one of the individuals manufacturing methamphetamine. Sanchez asks that this court consider Bell's and McAbee's testimonies through the lens of the incredible dubiosity rule. Sanchez details circumstances that he contends render their testimonies "incredible, inconclusive, equivocal and dubious." *Appellant's Brief* at 11.

[13] Under the incredible dubiosity rule, a court will impinge upon the factfinder's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Whatley v. State*, 908 N.E.2d 276, 282 (Ind. Ct. App. 2009), *trans. denied*. In other words, the evidence presented must be so unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone. *Moore v. State*, 27 N.E.3d 749, 751 (Ind. 2015). We also note that application of this rule is limited to cases where a single witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of guilt. *Id.*

Here, Sanchez challenges the testimony of two witnesses and there is circumstantial evidence of his guilt. Accordingly, the incredible dubiosity rule does not apply. Even if the rule did apply, the challenged testimony was not so incredible that no reasonable factfinder could believe it. Moreover, we note the jury was informed of the circumstances Sanchez claims cast doubt on the credibility of the witnesses. It was the jury's sole prerogative to assess the credibility of the witnesses in light of all of the evidence. We will not impinge on the jury's assessment in this regard.

Judgment affirmed.

Bailey, J. and Bradford, J., concur.