## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 11 2016, 6:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bryant Dowdy, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | August 11, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1506-CR-551 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Kurt M. Eisgruber, Judge <br><br> Trial Court Cause No. <br> 49G01-1302-MR-13442 |

**Brown, Judge.**

[1] Bryant Dowdy appeals his convictions and sentence for murder and attempted murder. Dowdy raises three issues which we consolidate and restate as:

> I. Whether the trial court abused its discretion in admitting certain evidence; and
>
> II. Whether the court abused its discretion in sentencing him.

We affirm.

## Facts and Procedural History

[2] On December 17, 2012, Dowdy, Eric Clanton, and Dominique Clanton planned to rob Nishant Patel, who had advertised an iPhone for sale on Craigslist. Dowdy contacted Patel and sent him a text message with a street address of an apartment in Indianapolis as a location to meet. Eric and Dominique arrived at the location in Eric's Camaro, and Eric stayed in the vehicle while Dominque exited it. Dominique saw Dowdy and another man, who Dominique believed was Dowdy's cousin, and the three of them entered the apartment building. Dowdy was wearing all black including a black hat and carried a black shotgun, and neither Dominique nor the other man had a weapon. The three men discussed their plan that Dominque and the other man would stall Patel until Dowdy came out pointing the shotgun.

[3] Patel arrived and parked his vehicle in front of the apartment building. Patel had with him the iPhone he planned to sell and his firearm, a Bersa Thunder 380 handgun. Dominique and the man he believed was Dowdy's cousin approached Patel's vehicle and talked about the iPhone and the selling price,

and Dominique saw the iPhone in a white box and a firearm on Patel's lap. The men pulled out their wallets to pretend they were gathering money. At that point, Dowdy approached Patel's vehicle pointing the shotgun, and Dominique turned and walked away. Dominique heard "a boom" and then ran to Eric's Camaro. Transcript at 190. Dominque dropped several items including raffle tickets from his wallet, attempted to pick them up but did not pick up everything, entered Eric's vehicle, and Eric drove to the house where Dowdy was staying. At the house, Dominique soon noticed that Dowdy had the iPhone and firearm that belonged to Patel in his hands. Dowdy told Dominique that he had dropped his hat at the scene and needed to go back to retrieve it, and he left the house. Eric and Dominique left to go the home of Dominique's mother. Patel died as a result of the robbery.

[4] On December 18, 2012, Dominique contacted Dowdy because he and Eric had a buyer lined up for the iPhone, and Dominique and Eric planned to meet Dowdy at a certain intersection in Indianapolis. Dominique drove to the location in Eric's Camaro, and Eric rode in the front passenger seat. After waiting at the location for about thirty minutes, Dominique and Eric saw Dowdy walking up the street again in all black with a black hat. Eric opened his door and lifted his seat up so Dowdy could climb in, and Dowdy entered the back of the Camaro and sat directly behind Eric. Dowdy handed Eric the iPhone still in the box and Dominique started the Camaro. As Dominique began to drive, his vision went black and he could not hear anything except a loud ringing in his ear, and he felt the door open and himself hit the pavement.

[5] A driver of another vehicle heard gunshots and then observed a car come to a stop in front of her. The driver observed a black male exit the driver's side door and begin to run northbound, saw Dominique fall out of the car and heard him yell for help and collapse, and observed the male that had initially run northbound come back, retrieve something from the car, and then run northbound again. The driver observed that the male who ran away wore a black hooded jacket and a black skull cap. The driver called 911.

[6] Indianapolis Metropolitan Police officers arrived at the scene and discovered Dominique on the road and Eric slumped over in the front passenger seat of the vehicle. Dominque made sounds loud enough to attract the attention of one of the officers. Eric was unresponsive, and officers discovered the iPhone in its box on the floorboard in front of Eric's body. Dominique had been shot in the back of the head, was transported by ambulance to the hospital, and survived. Eric suffered three gunshot wounds to his head and died as a result. The stippling on Eric indicated the shot was fired from within three feet. Cartridge cases recovered from the Camaro revealed that they were fired from the same firearm as the test cartridge located in Patel's Bersa Thunder 380 firearm case.[1]

[7] On February 26, 2013, the State charged Dowdy with the murder of Eric and the attempted murder of Dominique. On May 27, 2014, the State filed a notice

---

[1] Patel's brother gave law enforcement the test cartridge. The State presented testimony that a test fired cartridge is a cartridge case that a manufacturer includes with a particular firearm and that a comparison of spent cartridges found in the rear area of the Camaro and under one of the seats to the test case showed that all of the cartridges were fired from the same gun.

of intent to offer evidence under Ind. Evidence Rule 404(b) of other crimes to show motive, intent, preparation, knowledge, absence of mistake and/or identity, namely that Dowdy was charged with murder in another cause, that Dominique was his co-defendant in that case, and that Eric was present during the events leading up to and after the murder. At a hearing in November 2014, the State argued that Dominique was part of the robbery in the first murder, and the court stated "I think we'd lay it out as 404B but I guess I've always viewed these – well, the second one especially, is – is so close in time and so inextricably intertwined . . . ." *Id.* at 475. The court later stated "I think they are so intertwined that I don't even know if it's 404B but if you do consider it 404B I think it is motive and identity and any number of reasons why it would come in and then obviously your . . . plea agreement would come in too." *Id.* at 476.

[8] At a final pre-trial hearing on April 23, 2015, Dowdy argued that a threshold requirement is to determine whether or not the evidence consisting of the prior case is true, and that at the least the court needed to ascertain the likelihood of the truthfulness of the information in the other case. The State argued that it would "not mention the term 'murder' in its case-in-chief," that the evidence of the December 17, 2012 events related to Dowdy's motive to shoot Dominique and kill Eric, that it would introduce evidence that the casings found at the scene showed the shots were fired from the gun of the victim of the robbery, that Dominique saw the firearm and iPhone in Patel's vehicle and in Dowdy's possession the night of the robbery, and that Dowdy gave the iPhone to Eric on

the night Eric was shot. Supplemental Transcript at 5. The court stated "I do see where your motive and your identity, clearly you need that evidence from the first, so and that does put it within 404(b)" and "I do see it that way, . . . I see it through the State's eyes as far as they're wanting that evidence for motive purposes, identity, and it does corroborate their witness . . . ." *Id.* at 16. The court ruled that it would permit the State to present its requested evidence.

[9] At the start of Dowdy's trial on April 27, 2015, the court stated that the State's reliance on evidence of the events of December 17, 2012, "as far as motive . . . and identity are appropriate in this circumstance," noted that the State had indicated it would limit the evidence from that incident to not include the murder, although the door could be opened, and stated "[y]ou've made your record as far as your argument on that 404B. I will allow the State to utilize it." Transcript at 4. Later, when the State began to introduce evidence of what police observed and recovered at the scene on December 17, 2012, Dowdy objected and argued that the evidence "has nothing to do with this case" and was impermissible 404(b) evidence, and the court overruled the objection and noted that the arguments were made before trial. *Id.* at 43. Dowdy objected again a short time later, and the court stated "I do think you've preserved your record sufficiently so it is noted." *Id.* at 49.

[10] The State presented evidence related to the events of December 17, 2012, which included photographs of a shotgun shell as well as two raffle tickets and two business cards from Fifth Third Bank that were discovered on the ground around Patel's vehicle. The State elicited testimony from Dominique that raffle

tickets had fallen from his wallet and that he banked with Fifth Third Bank. Dominique testified that he and Dowdy were friends, he had known Dowdy for several years, he had met him when they were staying at the same apartment complex, his mother and Dowdy's mother were friends, and that he knew Dowdy's nickname. He also testified that Dowdy directed Patel to a particular location in the apartment complex where there were no cameras and that Dowdy was armed with a shotgun and Eric and Dominique were not armed. Dominique indicated that he was involved in the planning of the robbery of Patel, did not think it would be necessary to use a firearm, and was planning to take the phone from Patel and run away.

[11]     Dominique further testified that he gave a number of statements to police, and that he first spoke to a detective at the hospital, and said: "I said it was just me and Eric and I . . . didn't remember who else was in the car with me." *Id.* at 207. He further testified that this was not true and that he was not truthful with the detective because he was scared of Dowdy. He stated that, at some point while his mother was visiting him in the hospital, he told her that Dowdy was in the car and was the person who shot him and Eric. When asked how long he was in the hospital, Dominique answered "I'd say about two weeks." *Id.* at 209. He testified that he gave a second statement to a detective in the homicide office a few weeks later and that he still did not tell the detective who was in the back seat of the car "[b]ecause . . . Dowdy was still able to get [him] if [he] told what happened." *Id.* at 211. Dominique indicated that, after the second interview, he was arrested for his participation in the robbery of Patel.

[12]     Dominique also testified that, about a month after the second statement, he gave a third statement to the detective during which he told the detective that Dowdy was in the back seat of the Camaro on December 18, 2012. He stated that, at the time he gave the third statement, he had not entered into a plea agreement. He then indicated that, about ten months after the third statement, he gave a fourth statement at which detectives and his attorney were present and that, before that meeting, he was offered a plea agreement in exchange for talking to police regarding the events of December 17, 2012. The plea agreement provided that Dominique would plead guilty to conspiracy to commit robbery as a class A felony and would fully cooperate and testify against Dowdy and that the State would dismiss all remaining counts against Dominique.

[13]     Dominique's mother testified that when Dominique arrived at her house on December 17, 2012, he was crying and upset and did not tell her why, and said that he would tell her later. Dominique's mother also testified that she gave two statements to police, the first on December 19, 2012, and the second on January 10, 2013, and that, in the second statement, she shared new information with the detective which was that, while Dominique was hospitalized, he had informed her that Dowdy was the person who had shot him. The court admitted the testimony of Dominique's mother regarding Dominique's statement to her on the basis that it was a statement of identification.

The jury found Dowdy guilty of murder and attempted murder, and the court sentenced him to fifty years for the murder of Eric and twenty-five years for the attempted murder of Dominique, and ordered that the sentences be served consecutively for an aggregate sentence of seventy-five years.

## *Discussion*

### I.

The first issue is whether the trial court abused its discretion in admitting particular evidence regarding the events of December 17, 2012, and Dominique's statement to his mother. Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied, trans. denied*.

A. *December 17, 2012 Events*

Dowdy contends that, contrary to the State's assertion that the evidence regarding the December 17, 2012 incident showed his motive and identity, "[t]he only real similarity between the two incidents was the use of a firearm,

and different guns were used in each crime" and that "[t]hey were in part different crimes, different circumstances, accomplished by different methods, and the individuals allegedly involved had different relationships in each incident." Appellant's Brief at 14. He argues that the photographs of the crime scene and evidence of a shotgun shell, raffle tickets, and business cards found at the scene on December 17th did nothing to contribute to showing motive for the December 18th shootings. He also contends that the evidence that he had Patel go to a location with no cameras, that he was the only person with a shotgun, that he stealthily approached Patel, and that Dominque was scared and crying after the incident was not related to his motive for the December 18th crimes and was extremely prejudicial.

[17] The State notes that the trial court found that the December 17, 2012 crimes were inextricably bound up with the charged crimes, and argues that evidence of uncharged criminal acts which are intrinsic to the charged offense are admissible, and that the court properly allowed evidence of the robbery and killing of Patel because it was part of the same criminal conduct and not merely propensity evidence. The State maintains that Dowdy, Dominique, and Eric met on December 18, 2012 to finish their business related to the robbery, Dowdy shot Eric and Dominique with Patel's gun, the only reasonable inference is that Dowdy killed Eric and attempted to kill Dominique to cover up his involvement in the robbery and killing of Patel, and that, under these circumstances, evidence of the killing of Patel was necessary to complete the story of the crimes on trial.

[18]     In addition, the State asserts that for the first time on appeal Dowdy argues that some of the evidence of the December 17, 2012 incident was admissible but that other evidence should have been excluded as overly prejudicial or irrelevant, that these new arguments are waived, and that, waiver aside, even if evidence of the December 17th killing was only admissible to show motive, there is no merit to Dowdy's argument that the State could not present details of the crime. The State also contends that any error in the admission of the December 17th killing was harmless because Dominique identified Dowdy as the person in the car who was in a position to commit the shooting on December 18, 2012, that forensic evidence showed Eric was shot in the back of the head from within the car at close range, that Dominique had observed Dowdy in possession of the Bersa Thunder 380 handgun the previous night, and that the witness who called 911 observed someone fitting Dowdy's description exit the backseat of the car and run away after the shooting.

[19]     Ind. Evidence Rule 404(b) provides in part:

> (1)   *Prohibited Uses.*  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2)   *Permitted Uses; Notice in a Criminal Case.*  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . .

Ind. Evidence Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

The standard for assessing the admissibility of Rule 404(b) evidence is: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. *Whatley v. State*, 908 N.E.2d 276, 281 (Ind. Ct. App. 2009) (citing *Boone v. State*, 728 N.E.2d 135, 137-138 (Ind. 2000), *reh'g denied*; *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997)), *trans. denied*. The evidence is inadmissible when the State offers it only to produce the "forbidden inference" that the defendant has engaged in other, uncharged misconduct and the charged conduct was in conformity with the uncharged misconduct. *Id.* (citing *Crain v. State,* 736 N.E.2d 1223, 1235 (Ind. 2000)). The trial court has wide latitude, however, in weighing the probative value of the evidence against the possible prejudice of its admission. *Id.* If evidence has some purpose besides behavior in conformity with a character trait and the balancing test is favorable, the trial court can elect to admit the evidence. *Id.* (citing *Boone*, 728 N.E.2d at 138). For instance, evidence which is necessary for the jury to understand the relationships between the victim, various witnesses, and the defendant may be admissible. *Id.* (citing *Wilson v. State*, 765 N.E.2d

1265, 1270-1271 (Ind. 2002)).  In addition, evidence of motive is always relevant in the proof of a crime.  *Fry v. State*, 748 N.E.2d 369, 372 (Ind. 2001).

[21]  The challenged evidence regarding Dowdy's participation in the robbery and shooting of Patel on December 17, 2012, was not introduced to show his propensity to engage in crime or that his behavior was in conformity with a character trait.  The testimony of Dominique regarding the events of December 17, 2012 was necessary for the jury to understand the relationships between Dowdy, Dominique, and Eric and the context of the subsequent meeting and shooting of Dominique and Eric on December 18, 2012.  The testimony further explained why Dominique contacted Dowdy on December 18, 2012 to say that he had a buyer lined up for the iPhone, why Dominique and Eric arranged a meeting with Dowdy, and why Dowdy handed a white box containing an iPhone to Eric while seated in the Camaro.  Additionally, the challenged evidence was offered to establish Dowdy's motive to commit the crimes against Dominique and Eric on December 18, 2012, and Dowdy's identity as the person who committed the crimes. We cannot say the probative value of the challenged evidence was substantially outweighed by the danger of unfair prejudice, and the admission of the evidence did not violate Rule 404(b).  *See Fry*, 748 N.E.2d at 372 (holding that the State offered the evidence of a scheme to steal a television involving the defendant and one of the victims to show the defendant's motive for killing the victims and that the admission of the evidence did not violate Ind. Evidence Rules 404(b) or 403); *Whatley*, 908 N.E.2d at 282 (noting the evidence of the defendant's drug use and delivery was necessary for

the jury to understand the relationships between the defendant, the victim, and the other witnesses and the context of the events which culminated in the victim's death and holding the evidence did not violate Ind. Evidence Rules 404(b) or 403) (citing *Wilson*, 765 N.E.2d at 1270-1271 (holding that evidence of the defendant's drug dealing and prostitution-related activities was admissible in a murder prosecution and did not violate Ind. Evidence Rules 404(b) or 403 where the evidence was "necessary for the jury to understand the relationships between the victim, various witnesses, and the defendant"); *Ross v. State*, 676 N.E.2d 339, 346 (Ind. 1996) (holding that prior misconduct was "admissible because it demonstrated the defendant's motive and intent to commit the murder and illuminated the relationship between the defendant and victim")).

B. *Dominique's Statement to His Mother*

[22] Dowdy also argues that the trial court erred in allowing Dominique's mother to testify as to the contents of Dominique's statement to her at the hospital that Dowdy was the person who shot him. Ind. Evidence Rule 801 provides that hearsay is a statement not made by the declarant while testifying at the trial or hearing and is offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 802 provides that hearsay is not admissible unless these rules or other law provides otherwise. Ind. Evidence Rule 801(d)(1) provides that a statement is not hearsay if:

> *A Declarant-Witness's Prior Statement*. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:

(B)     is consistent with the declarant's testimony, and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

(C)     is an identification of a person shortly after perceiving the person.

[23]     Dowdy asserts that "the main issue is the timing of the claimed motive to fabricate." Appellant's Brief at 21. He states that Dominique provided different information in his first two statements to the detectives than he did in the rest and that it is apparent that he did the same when he first talked to his mother while in the hospital. He argues that Dominique's statement to his mother "was made after his motive to fabricate arose." *Id.* He states that Dominique knew he could be charged in connection with the death of Patel on December 17th and had "a virtually instant motive to lie about Dowdy's identity and involvement in the December 17 case in an attempt to implicate Dowdy instead of himself." *Id.* at 23.

[24]     The State contends that the court properly admitted the testimony of Dominique's mother regarding Dominique's prior identification of Dowdy as the shooter, noting that the trial court admitted the testimony under the exception to the hearsay rule for statements of identification of a person under Ind. Evidence Rule 801(d)(1)(C). The State argues that Dominique's identification was not hearsay because he identified Dowdy as the shooter to

his mother a few weeks after the shooting and that, based on Dominique's presence at trial and availability for cross-examination, the prior identification was admissible under Ind. Evidence Rule 801(d)(1)(C). The State further asserts that Dowdy's argument on appeal misstates the record by asserting that testimony of Dominique's mother was permitted as a prior consistent statement when in fact it was admitted as identification evidence. Additionally, it contends that Dominique's prior statement would have been admissible under Evidence Rule 801(d)(1)(B), that Dominique would have had no motive to fabricate until he received a benefit for agreeing to testify against Dowdy, and that the testimony of Dominique's mother would also have been admissible to rehabilitate Dominique from Dowdy's suggestion during cross-examination that Dominique implicated him in exchange for leniency in the other crime. Finally, it states that any error in admitting the identification testimony of Dominique's mother was harmless because Dominique identified Dowdy as the shooter at trial, Eric was shot from behind at close range, Dowdy's use of Patel's gun tied him to the shooting, and a bystander who called 911 corroborated Dominique's account.

[25] Dominique testified before the jury and was subject to cross-examination about his prior statement. The record shows that Dominique's mother gave a second statement to police on January 10, 2013, in which she said that Dominique had informed her at the hospital that Dowdy was the person who had shot him. Dominique testified that he had been hospitalized for approximately two weeks, that he had perceived Dowdy enter the backseat of the Camaro, and that

he and Dowdy were friends. We cannot say that the trial court abused its discretion in finding that Dominique's statement to his mother constituted an identification of Dowdy shortly after Dominique perceived him pursuant to Ind. Evidence Rule 801(d)(1)(C). *See Dickens v. State*, 754 N.E.2d 1, 6 (Ind. 2001) (stating that statements of identification are not hearsay if they are made shortly after perceiving the person and the declarant is available for cross-examination concerning the statement at trial under Ind. Evidence Rule 801(d)(1)(C), noting that "the term 'shortly' is relative rather than precise," the purpose of the rule is to assure reliability, and holding that the statements qualified as statements of identification and were not hearsay) (citing *Robinson v. State*, 682 N.E.2d 806, 810-811 (Ind. Ct. App. 1997) (observing that the declarant made his statement identifying the defendant as one of the men who shot the victims two months and thirteen days after the shootings, noting that the declarant testified that he knew the defendant and that the two were friends, and holding that the identification was made shortly after perceiving the defendant for purposes of Ind. Evidence Rule 801(d)(1)(C))).

[26] Additionally, we observe that Dominique's statement to his mother while he was hospitalized was consistent with his testimony at trial that Dowdy was the person who shot him. The Indiana Supreme Court has stated that whether a motive to fabricate has arisen is a fact sensitive issue and we do not automatically find that a participant in a crime has a motive to fabricate, even where the police are inquiring into the declarant's involvement in the crime. *Holsinger v. State*, 750 N.E.2d 354, 360 (Ind. 2001). At the time Dominique told

his mother that Dowdy was the person who shot him, Dominique had not been arrested for his participation in the robbery of Patel and had not obtained any promise of leniency with respect to possible charges for his involvement in the robbery. In eliciting testimony from Dominique that he faced a shorter sentence because he entered a plea agreement, Dowdy suggested that Dominique recently fabricated his testimony against him to obtain leniency. To rebut that charge the State was allowed to offer evidence of Dominique's prior statement to his mother pursuant to Ind. Evidence Rule 801(d)(1)(B). *See id*. at 359-360 (holding that, at the time an accomplice to a robbery gave a statement to police implicating the defendant in the murder of a robbery victim, the accomplice did not have a motive to fabricate and that the statement was admissible under Ind. Evidence Rule 801(d)(1)(B) to rebut an implied charge of fabrication). We cannot say that the trial court abused its discretion in admitting Dominique's statement to his mother under Ind. Evidence Rule 801(d)(1).

## II.

[27] Next, Dowdy argues that the court abused its discretion in sentencing him to consecutive sentences because it did not articulate a reason for imposing consecutive sentences. He also contends that the court provided almost nothing to review. The State posits that the trial court's statement, while brief, was adequate because it explained that Dowdy's consecutive sentences were justified by the multiple victims.

We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

The Indiana Supreme Court has stated that "before a trial court can impose a consecutive sentence, it must articulate, explain, and evaluate the aggravating circumstances that support the sentence." *Monroe v. State*, 886 N.E.2d 578, 580 (Ind. 2008). In reviewing the court's sentencing decision, we may consider both the written and oral sentencing statements. *See Corbett v. State*, 764 N.E.2d 622, 631 (Ind. 2002).

[30]    At sentencing, the court stated:

> I do believe though based on the circumstances of this crime, I think each victim should be sentenced individually. When I think back to it, the shots were taken, I believe, first at Eric Clanton, although I'm not certain, and then the weapon had to be turned . . . towards the second victim, and that victim was Dominique, if it did occur that way. But regardless, it wasn't two victims in one line of fire, it was two lines of fire at two different victims, so they will be sentenced consecutively.
>
> As to Eric, who is the subject of Count One, I believe the Court will sentence a 50-year sentence to the Department of Corrections. As to Dominique, the sentence will be a 25-year sentence consecutive to a 50-year sentence. Overall, a 75-year sentence will be imposed. That is 75 years at the Department of Corrections.

Transcript at 464-465.

[31]    The presence of multiple victims is an aggravating circumstance that justifies the imposition of consecutive sentences. *See Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008) (stating that "[w]hether the counts involve one or multiple victims is highly relevant to the decision to impose consecutive sentences"); *McCann v. State,* 749 N.E.2d 1116, 1120 (Ind. 2001) (noting that "[i]njury to multiple victims has been cited several times by this Court as supporting enhanced and consecutive sentences"); *Gilliam v. State*, 901 N.E.2d 72, 74 (Ind. Ct. App. 2009) (stating "a single aggravating circumstance may justify the imposition of consecutive sentences" and "[t]he presence of multiple victims is one such aggravating circumstance").

Based on the trial court's comments that multiple victims justified consecutive sentences, we cannot say the court abused its discretion in sentencing Dowdy to consecutive terms. *See Gross v. State*, 22 N.E.3d 863, 870 (Ind. Ct. App. 2014) (holding the trial court did not abuse its discretion in ordering consecutive sentences and noting the court's support for its decision to impose consecutive sentences included that there had been two murder victims), *trans. denied*.

### *Conclusion*

For the foregoing reasons, we affirm Dowdy's convictions and sentence for murder and attempted murder.

Affirmed.

Baker, J., and May, J., concur.