

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 19S-CT-18

## Levetta Tunstall,
*Appellant (Defendant)*



FILED

Jun 26 2019, 1:33 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## Dawn Manning,
*Appellee (Plaintiff)*

Argued: February 14, 2019 | Decided: June 26, 2019

Appeal from the Marion Superior Court
No. 49D14-1602-CT-7366
The Honorable James B. Osborn, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 49A04-1711-CT-2572

**Opinion by Chief Justice Rush**

Justices David, Massa, and Goff concur.
Justice Slaughter dissents with separate opinion.

**Rush, Chief Justice.**

This case presents an issue of first impression for this Court: may a party use evidence of an expert witness's professional disciplinary history to challenge the expert's credibility? Here, an expert–doctor testified that the plaintiff suffered permanent injury from an auto accident. And the defendant was not permitted to introduce evidence that the expert's medical license had previously been on probation or evidence of the reasons underlying the expert's past professional discipline.

Today, we hold that both types of evidence—an expert witness's professional-licensure status and the reasons for professional discipline—may be admissible to challenge the expert's credibility. Under the facts of this case, the trial court abused its discretion when it excluded evidence that the expert–doctor's medical license had been on probation—though the error was harmless. And the trial court properly excluded evidence of the reasons for the doctor's professional discipline, as that evidence was inadmissible under certain evidentiary rules. We thus affirm the jury's verdict in the plaintiff's favor.

## Facts and Procedural History

On a clear, dry afternoon, Dawn Manning was waiting at a stop sign in her vehicle when she was rear-ended by Levetta Tunstall. Manning pulled over and immediately began experiencing head and neck pain. Although she declined an ambulance, Manning later went to the emergency room—leaving the hospital that evening with a neck brace and pain medication.

Over the next several months, Manning tried various treatments for her ongoing pain. Months of twice-weekly chiropractor appointments yielded little improvement, so Manning stopped going and turned to other doctors. A family doctor's x-rays, and a spine specialist's MRIs, of her spine came back normal. The spine specialist offered injections, but Manning declined them because they could be ongoing for the rest of her life.

Then, nearly a year after the accident, Manning went to see Dr. Stephen Paschall. Manning reported a constant ache in her neck and regular back

spasms that lasted up to thirty seconds. Dr. Paschall observed a reduced range of motion in Manning's cervical spine and took x-rays that indicated a significant loss of motion segment integrity in her spine. Based on the medical exam, the doctor concluded that Manning had reached "maximum medical improvement" with 28% impairment of her whole body, and that the injury resulted from the auto accident.

Manning sued Tunstall. Before trial, Manning's counsel deposed Dr. Paschall. Toward the end, Tunstall's counsel asked the doctor about his professional disciplinary history—starting with whether his license had ever been on probation, revoked, or suspended.

Dr. Paschall admitted that his medical license had previously been on probation, but he would not answer questions about reasons underlying his past professional discipline.

The day before trial, Tunstall moved to compel Dr. Paschall to answer those unanswered deposition questions and reasonable follow-up questions. The trial court denied Tunstall's motion, reasoning that Dr. Paschall's professional disciplinary history was not relevant because his medical license was in good standing at the time of trial. Ultimately, this meant the trial court would not admit any evidence about Dr. Paschall's licensure probation or the reasons for his past professional discipline.

At the jury trial, Manning testified—as did her parents, best friend, and boyfriend—about the negative changes in her disposition and lifestyle since the accident. The only medical testimony Manning presented was from Dr. Paschall's deposition. Tunstall, on the other hand, called two expert witnesses, both of whom disagreed with Dr. Paschall's assessment of Manning's condition.

In the end, the jury found in Manning's favor and awarded $1.3 million in damages.

Tunstall appealed, arguing in part that the trial court abused its discretion by not allowing the jury to hear testimony that Dr. Paschall's license was, at one time, placed on probation and testimony about the reasons for the doctor's past professional discipline. A split panel of the Court of Appeals disagreed and affirmed the jury's verdict. *Tunstall v.*

*Manning*, 107 N.E.3d 1093, 1098–99, 1102 (Ind. Ct. App. 2018). Judge Baker dissented, believing that excluding evidence of Dr. Paschall's professional disciplinary history was reversible error. *Id.* at 1102–03 (Baker, J., dissenting).

Tunstall petitioned for transfer, which we granted, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

This case involves the admissibility of two related, but distinct, types of evidence to impeach an expert witness. The first is evidence of an expert witness's professional licensure status—that is, evidence that an expert's professional license has ever been, or is currently, limited in some way. The second is evidence of the reasons for past professional discipline.

Here, the trial court excluded both types of evidence. To the extent the court's ruling depended on a legal question—whether certain evidence is generally admissible for impeachment—we review the ruling de novo. *See Fairbanks v. State*, 119 N.E.3d 564, 567 (Ind. 2019). But to the degree the ruling did not raise a question of law, we review it for an abuse of discretion. *Id.*

## Discussion and Decision

Expert testimony is a valuable litigation tool. And it is particularly significant when, in cases like this, competing expert testimony offers different conclusions on the seriousness of an auto-accident injury.

A trial court may admit expert testimony if it "will help the trier of fact to understand the evidence or to determine a fact in issue" and, for expert scientific testimony, if it "rests upon reliable scientific principles." Ind. Evidence Rule 702. Once these conditions are met and the expert testifies, "the accuracy, consistency, and credibility of the expert's opinions may properly be left to vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact." *Bennett*

*v. Richmond*, 960 N.E.2d 782, 786–87 (Ind. 2012) (quoting *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 461 (Ind. 2001) (plurality opinion)).

There is no dispute that Dr. Paschall's expert testimony met the requirements of Indiana Evidence Rule 702; the dispute is whether the credibility of his expert opinion could be attacked by evidence of his professional disciplinary history.

Tunstall argues that it was an abuse of discretion to bar evidence of Dr. Paschall's past licensure status and the reasons for his past professional discipline. She maintains that this evidence was relevant to the credibility of Dr. Paschall's opinion—the only medical testimony supporting Manning's permanent-injury claim.

Manning responds that the trial court properly excluded evidence of Dr. Paschall's professional disciplinary history, as it was either irrelevant or otherwise barred by our evidentiary rules.

Both parties are partially correct. The trial court abused its discretion in excluding evidence that Dr. Paschall's license was on probation previously, but the court correctly barred evidence of the reasons for the past professional discipline. Because we find the trial court's evidentiary error harmless, we affirm the judgment.[1]

## I. Evidence of both an expert witness's professional licensure status and the reasons for professional discipline may be admissible to impeach that expert's credibility.

Our Court of Appeals has addressed the admissibility of professional disciplinary history on two occasions.

First, in *Fridono v. Chuman*, the court held that the modification, restriction, or termination of an expert witness's medical-staff privileges

---

[1] On all other issues, we summarily affirm the decision of the Court of Appeals. *See* App. R. 58(A)(2).

was admissible to impeach that expert's credibility. 747 N.E.2d 610, 620 (Ind. Ct. App. 2001), *trans. denied*. But the **reasons** for those final disciplinary actions were inadmissible because they were a peer-review committee's opinions and discussions, which are protected by statute. *Id.* at 617–19; *see* Ind. Code § 34-30-15-9 (2018).

Later, the court in *Linton v. Davis* likewise held that a testifying expert–doctor's licensure status was admissible for impeachment purposes. 887 N.E.2d 960, 969 (Ind. Ct. App. 2008), *trans. denied*. Relying on *Fridono*, *Linton* held that the Medical Licensing Board's specific findings in reaching the licensure-status decision were inadmissible. *Linton*, 887 N.E.2d at 969.

Although both *Fridono* and *Linton* rightly recognized that evidence of a testifying expert's professional licensure status may be admissible for impeachment purposes, the *Linton* panel misunderstood why, in *Fridono*, the **reasons** for the final disciplinary action were inadmissible. It was not because our rules of evidence precluded admission; it was because the peer-review statute did. *See Fridono*, 747 N.E.2d at 617–19; I.C. § 34-30-15-9. That statute, however, did not apply to the Medical Licensing Board's findings in *Linton*. Nor did a similar statute bar the Board's findings from a judicial proceeding. Thus, *Linton* is overly restrictive, and we disapprove its holding that our rules of evidence generally prohibit admitting evidence—to impeach an expert witness—of the reasons for professional disciplinary action.

Both types of professional disciplinary history—limitations on professional licenses and the reasons underlying professional discipline—may be relevant to an expert's credibility. And an expert's credibility goes to the weight a jury assigns to that witness's testimony. That weight, in turn, may directly affect the outcome of the case. After all, the trial court allows expert testimony only if it will help the jury "to understand the evidence" presented or "to determine a fact in issue." Evid. R. 702(a).

So when a testifying expert has been subject to professional discipline, both an expert's professional licensure status and the reasons for professional discipline may be admissible to impeach that expert's

credibility. But the evidence's admissibility is subject to statutory restrictions and specific rules of evidence.

We now turn to whether the trial court abused its discretion when it excluded both types of evidence about Dr. Paschall's licensure history.

## II. The trial court abused its discretion when it excluded evidence of Dr. Paschall's licensure probation, but it properly excluded evidence of the reasons for the doctor's past professional discipline.

Here, the trial court excluded two types of evidence relating to Dr. Paschall's professional disciplinary history—evidence that his license had been on probation previously and evidence of the reasons for his past professional discipline. As explained below, the court should have admitted the former, but it properly excluded the latter.

### A. Evidence of the doctor's past licensure status was relevant and had significant probative value.

In excluding evidence about Dr. Paschall's past licensure probation, the trial court reasoned that the evidence lacked relevance because the doctor's license was in good standing at the time of trial. But that ruling was an abuse of discretion. Evidence of the licensure probation was admissible to impeach the doctor because it was relevant to his credibility and its probative value outweighed any prejudicial effect. *See* Evid. R. 401, 402, 403.

Manning presented Dr. Paschall's testimony to establish his diagnosis of her injury. Thus, the doctor's professional qualifications—including that his medical license had previously been on probation—were relevant to the credibility of his medical opinion. *See* Evid. R. 401, 402; *see also Mousseau v. Schwartz*, 756 N.W.2d 345, 359 (S.D. 2008) (holding that an expert–neurosurgeon's licensure probation was relevant to the credibility of the expert's testimony in the field of neurosurgery).

Still, relevant evidence must pass Indiana Evidence Rule 403's balancing test. *Sims v. Pappas*, 73 N.E.3d 700, 707 (Ind. 2017). Under Rule 403, a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Evid. R. 403.

Here, the probative value of the licensure-probation evidence outweighed any of Rule 403's dangers. Dr. Paschall was the only medical expert to testify on Manning's behalf, and his medical license was placed on probation only a few months after he first examined Manning.

Thus, the trial court should not have excluded this evidence. The jurors were entitled to hear it and assess whether it affected their view of the doctor's expert testimony.

## B. Evidence of the reasons for the doctor's past professional discipline was barred by specific evidentiary rules.

Tunstall also tried to impeach Dr. Paschall's testimony with evidence of the reasons for his professional discipline. These reasons included two prior misdemeanor convictions and two other acts of misconduct. Because this evidence was inadmissible for impeachment under certain evidentiary rules, the trial court properly excluded it.

Over the years, the Medical Licensing Board of Indiana received two complaints from the State against Dr. Paschall. After the first, the doctor entered into a settlement agreement, stipulating that he had "engaged in fraud or material deception" by failing to disclose, on his online medical-license renewal application, a pending criminal violation. The Board approved the agreement and imposed disciplinary sanctions.

The second complaint alleged that Dr. Paschall violated the standards of professional practice in multiple ways. The Board found him in violation for three reasons—two involved misdemeanor convictions, and the third concerned a failure to maintain controlled-substance dispensing

records. As a result, the Board imposed discipline that included placing the doctor's medical license on probation for at least one year.

The trial court did not abuse its discretion when it excluded evidence of these reasons for Dr. Paschall's professional discipline, because that evidence is inadmissible under Indiana Evidence Rules 608 and 609.

First, the misdemeanor convictions are inadmissible under Rule 609. Although this rule permits impeachment by certain criminal convictions, the misdemeanor convictions here fall outside the rule's scope. *See* Evid. R. 609(a).

Second, the other reasons—that Dr. Paschall engaged in "fraud or material deception" to receive his license and that he failed to maintain required records—are inadmissible under Rule 608(b). This rule makes extrinsic evidence, apart from criminal convictions permitted under Rule 609, inadmissible "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Evid. R. 608(b); *see also Stonebraker v. State*, 505 N.E.2d 55, 59 (Ind. 1987) ("It is a well-established rule that a witness cannot be impeached by specific acts of misconduct which have not resulted in criminal convictions."). Rule 608(b)'s limitation extends to both proof of and reference to specific acts of misconduct. *See Turnbow v. State*, 637 N.E.2d 1329, 1332 (Ind. Ct. App. 1994) (holding that it is improper to cross-examine a witness on prior acts of misconduct when this evidence is directed only to the credibility and character of that witness), *trans. denied*; *see also* 12 Robert Lowell Miller, Jr., *Indiana Practice, Indiana Evidence* § 608.201 (4th ed. 2016).

Here, Tunstall tried to use extrinsic evidence to attack Dr. Paschall's credibility. She presented him with a copy of the settlement agreement and attempted to question him about its specific findings. She also asked him if his licensure probation was "with regard to failure to maintain controlled substance dispensing records?" But under Rule 608(b), evidence of these prior, uncharged acts was inadmissible to impeach the doctor.

Thus, the trial court did not abuse its discretion when it excluded evidence of the reasons for Dr. Paschall's past professional discipline. But

because it should not have excluded evidence of his licensure probation, we now assess whether that error was harmless.

## III.  Excluding evidence of Dr. Paschall's licensure probation was harmless error.

Tunstall argues that excluding evidence of Dr. Paschall's licensure probation was reversible error, not harmless error, because it "depriv[ed] the jury of the opportunity to accurately assess [his] credibility in the face of contrary expert evidence." Manning disagrees.

An error excluding evidence is harmless if "its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights." *Rohr v. State*, 866 N.E.2d 242, 246 (Ind. 2007) (quoting *Williams v. State*, 714 N.E.2d 644, 652 (Ind. 1999)); *see also* App. R. 66(A); Ind. Trial Rule 61. When making this determination, we consider the evidence's likely impact on a reasonable, average jury. *See Bonner v. State*, 650 N.E.2d 1139, 1141–42 (Ind. 1995).

On this record, we conclude that the trial court's error was harmless for two reasons. First, even without the excluded evidence, Tunstall throughout trial methodically attacked Dr. Paschall's credibility and his diagnosis of Manning's condition. Second, Manning presented substantial and consistent testimony about how her injury has had a significant, permanent impact on her life.

To start, Tunstall attacked Dr. Paschall's credibility during opening argument in several ways: highlighting that he failed part of a board certification exam twice and never became board certified; arguing that he was in the business of performing medical examinations and that he worked with Manning's counsel previously; saying that, when making his conclusions, he didn't review all the records that may have been pertinent; and noting that he never said his opinions were to the degree of medical certainty. In short, before the jury heard Dr. Paschall's testimony, Tunstall cast doubt on his credibility.

Then, when the jury watched Dr. Paschall's deposition, they saw Tunstall spend nearly half of it forcefully cross-examining him on his credibility and conclusions.

And the jury later heard testimony from Tunstall's two expert witnesses, who also attacked Dr. Paschall's credibility and assessment of Manning's condition. Forensics biomechanical engineer Dr. Ana Barbir disagreed with Dr. Paschall's conclusion that Manning could have suffered a permanent injury from a one-time low-speed impact event. Similarly, neurosurgeon Dr. David Steiman opined that Manning's medical records revealed "no permanent partial impairment rating whatsoever" and that Dr. Paschall "rated her wrong."

As a result, the fact that Dr. Paschall's medical license had been on probation would have been a small drop in the large bucket of Tunstall's evidence attacking Dr. Paschall's credibility. *See Zanders v. State*, 118 N.E.3d 736, 754 (Ind. 2019).

In addition to hearing the doctor's credibility undermined, the jury also heard substantial and consistent testimony on the significant, permanent impact of Manning's injury. *See Murphy v. State*, 265 Ind. 116, 128, 352 N.E.2d 479, 486 (1976) ("The weight to be accorded expert testimony, as well as lay testimony, is the exclusive province of the [jury] which is at liberty to discount it or to reject it in the face of lay testimony which it finds more persuasive.").

Manning testified that since the accident, she has been unable to exercise and has given up her modeling career—two activities she misses the most. She also explained that she cannot work as much as she used to at her father's tax business.

And Manning's parents, best friend, and boyfriend described how she has not been herself since the accident. They said that Manning has shown signs of depression and anxiety, she has more mood swings, and her overall attitude has deteriorated. Manning and her boyfriend have also suffered intimacy issues. Expert testimony aside, this evidence supports the negative effects and permanent nature of Manning's injury.

For these reasons, we cannot conclude that the trial court's improper exclusion of Dr. Paschall's one-time licensure probation affected Tunstall's substantial rights. Accordingly, this evidentiary error does not require reversal.

# Conclusion

We hold that an expert witness's professional licensure status and the reasons for professional discipline may be admissible to impeach that expert's credibility. The trial court abused its discretion here by excluding evidence that Dr. Paschall's medical license had previously been on probation. But because we find that error was harmless, we affirm the jury's verdict.

David, Massa, and Goff, JJ., concur.
Slaughter, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT
Brian J. Paul
Harmony A. Mappes
Jason M. Rauch
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Ronald S. Todd
Ronald S. Todd, P.C.
Noblesville, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS ASSOCIATION
Daniel J. Buba
Thomas C. Doehrman
Doehrman●Buba
Indianapolis, Indiana

**Slaughter, J., dissenting.**

I agree that the trial court abused its discretion in excluding evidence of Dr. Paschall's past licensure status. This evidence was relevant to his credibility as a medical expert and had significant probative value. But its exclusion was not harmless. I would reverse the trial court's judgment for Manning and remand for a new damages trial.

Dr. Paschall's testimony was the lynchpin of Manning's case. The record shows that the doctor has twice received professional discipline from Indiana's licensing authority since 2009—the more recent occurring only months after he examined Manning. Because of the trial court's evidentiary ruling, the jury never learned of the doctor's troubled record. I do not take issue with the Court's conclusion that Evidence Rule 608(b) prevented Tunstall from impeaching the doctor with "specific instances" of his prior misconduct. But that rule did not foreclose her from impeaching the doctor with the fact of his prior discipline. Even if the jury could not learn the "specific instances" of misconduct prompting the doctor's discipline, a reasonable jury would diminish the weight it assigned to the testimony of a doctor sanctioned not once but twice, especially when considering his testimony against that of two other experts without such baggage.

The Court holds otherwise. It concludes that no reasonable jury would have been swayed by this evidence because Tunstall challenged Dr. Paschall's testimony in other ways during the trial. True enough. But such challenges do not carry the same weight as official sanctions by a medical licensing board charged with deciding who is fit to practice medicine. The fact and recency of Dr. Paschall's past professional discipline persuade me that this evidence likely would influence how a reasonable jury weighs his testimony. In my view, the exclusion of this evidence was not only erroneous but also prejudicial.

For these reasons, I respectfully dissent.