

**FILED**

Dec 29 2023, 9:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Janet Lynn Thompson
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Catherine E. Brizzi
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon Lee Kendall,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 29, 2023

Court of Appeals Case No.
23A-CR-1473

Appeal from the Greene Superior
Court

The Honorable Dena A. Martin,
Judge

Trial Court Cause No.
28D01-2208-F6-150

**Opinion by Judge Brown**
Judges Tavitas and Foley concur.

**Brown, Judge.**

[1] Brandon Lee Kendall appeals his conviction for identity deception as a level 6 felony. He raises three issues which we revise and restate as:

I. Whether the trial court abused its discretion by admitting an unredacted arrest warrant;

II. Whether the evidence was sufficient to support his conviction; and

III. Whether the identity deception statute violated the Proportionality Clause of Article 1, Section 16 of the Indiana Constitution.

We affirm.

### Facts and Procedural History

[2] On July 27, 2022, Linton City Patrolman Davis Aerne received a dispatch to investigate a call. After arriving in the area, a bystander flagged down Patrolman Aerne and directed him across the highway. Patrolman Aerne "drove up there" and located the suspect, matching the description he had been given, walking on the side of the road. Transcript Volume II at 182.

[3] Patrolman Aerne approached the suspect and informed him that "someone called" him in and reported he was "stealing a bunch of stuff." State's Exhibit 1 at 0:30-0:36. Kendall stated that the item was at his house, he would return it, and it belonged to his friend who died. Kendall told Patrolman Aerne that his name was Tyler Cliver and his date of birth was August 3, 1988. He also provided an address, said that was his address, and began walking away from the scene.

[4] Patrolman Aerne ran the name Tyler Cliver and discovered that the date of birth did not match. He then ran the date of birth Kendall had given him, which populated some results, looked at the photograph attached to the name Brandon Kendall, and determined the suspect was Kendall. Patrolman Aerne ran Kendall through the Indiana BMV and determined that he had an arrest warrant for escape as a level 5 felony.

[5] On August 4, 2022, the State charged Kendall with identity deception as a level 6 felony. Specifically, the State alleged that Kendall, "with the intent to defraud or harm another person, did knowingly or intentionally use the identifying information to profess to be another person, to-wit: Tyler Cliver, contrary to the form of the statutes in such cases made and provided by I.C. 35-43-5-3.5(a) . . . ." Appellant's Appendix Volume II at 40. The State also alleged that Kendall was an habitual offender.

[6] On March 11, 2023, Kendall filed a motion to dismiss and argued that, "the facts in this case . . . do not constitute the offense of identity deception" and the identity deception statute as being applied to him violates the Proportionality Clause. *Id.* at 46. On March 15, 2023, the court held a hearing and denied the motion on March 20, 2023.

[7] On March 26, 2023, Kendall filed a motion in limine to exclude any testimony or evidence related to the body cam footage, his past arrests and convictions, pending and unrelated criminal charges, and arrest warrants. On April 3, 2023, the court held a hearing. After argument, the court stated:

As far as the 404(B) arguments, the court's going to allow the warrants to come in, but I am going [to] ask that those be redacted so it doesn't show what the offense is that the, the warrants are for. So, redact those, show that, you can show that they're felony warrants, but not show the specific charge. I'm going to show that the, the body cam will be allowed in and I'm just going to ask, instruct the State not to embellish the . . . allegations that are contained within the body cam and . . . what they were actually out there for. So, try not to use the word burglary or don't use the word burglary.

Transcript Volume II at 62. Later the court stated: "Take out the escape." *Id.* at 67.

On April 4, 2023, the court held a jury trial. Kendall's counsel renewed the motion to dismiss, which the court denied. During Patrolman Aerne's testimony, the prosecutor asked him to describe the dispatch and his resulting actions. Kendall's counsel objected and the court stated: "If you're offering it for the course of conduct by the officer, the court will allow it." *Id.* at 181. Patrolman Aerne stated: "I was called to an area in reference a [sic] male in subject in Abel's backyards." *Id.*

Kendall's counsel objected to the admission of a certified copy of the arrest warrant for escape and argued that the warrant should not "come in at all" and that, if the court were to allow discussion about the warrant, "it should be limited to that just [sic] and advisement that there was a[n] arrest warrant without physically putting in the document." *Id.* at 189. She also argued that, if the document were admitted, then "at least the nature of the charge should be

stricken . . . and redacted . . . ." *Id.*  The prosecutor argued in part that Kendall knew there was a warrant and "that was his motive." *Id.* at 190.  The court stated that "because this is a specific intent statute . . . I am showing that . . . the State does have . . . that burden on that element." *Id.* at 191.  It also stated:

> I also had considered if you redact, because I had originally thought we redact the name of that, but again the State's argued that the course of conduct based upon what it is, but I think that that adds to so much speculation of the jury.  Because, I mean, . . . you've got a six-letter word there and if you mark it out it causes the jury to speculate, I don't that [sic] jurors know the difference between a level 1 and a level 5.  That could say murder.  And, and you've redacted it.  So, I think that it's, I think is more appropriate to have it in there so that, that it is not confusing to the jury and it doesn't lend to any additional speculation that, that we don't want.

*Id.* at 192.

[10]     The court admitted the arrest warrant which stated in part: "You are hereby commanded to arrest Brandon Kendall . . . to answer the State of Indiana on a charge of Escape, a Level 5 Felony . . . ."  Exhibits Volume IV at 27.  The court also admitted the body camera footage with the interaction between Patrolman Aerne and Kendall.

[11]     After the State rested, Kendall's counsel moved for a directed verdict.  The court denied the motion.  The jury found Kendall guilty of identity deception as a level 6 felony, and Kendall admitted to being an habitual offender.  The court

sentenced Kendall to two years and enhanced the sentence by four years for his status as an habitual offender.

## *Discussion*

### I.

[12] The first issue is whether the trial court abused its discretion by admitting the arrest warrant. Kendall argues the prejudicial effect of allowing the jury to know that he had a warrant for escape substantially outweighed any probative value and should not have been allowed. He contends that the use of the escape charge on the warrant to link his alleged previous escape to his conduct in this case was prohibited by Ind. Evidence Rule 404(b).

[13] Ind. Evidence Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2) provides: "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

[14] The standard for assessing the admissibility of Rule 404(b) evidence is: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence

against its prejudicial effect pursuant to Ind. Evidence Rule 403.[1] *Boone v. State*, 728 N.E.2d 135, 137-138 (Ind. 2000), *reh'g denied*. The purpose of the rule is to prevent the jury from making the "forbidden inference" that a defendant is guilty of the charged offense on the basis of other misconduct. *Hicks v. State*, 690 N.E.2d 215, 218-219 (Ind. 1997). The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission. *Crain v. State*, 736 N.E.2d 1223, 1235 (Ind. 2000). If evidence has some purpose besides behavior in conformity with a character trait and the balancing test is favorable, the trial court can elect to admit the evidence. *Boone*, 728 N.E.2d at 138. For instance, evidence which shows the defendant's motive or plan may be admissible. *See* Ind. Evidence Rule 404(b)(2).

[15] In addition, Ind. Appellate Rule 66(A) provides:

> No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

[16] The Indiana Supreme Court recently held:

> When an appellate court must determine whether a non-constitutional error is harmless, Rule 66(A)'s "probable impact test" controls. Under this test, the party seeking relief bears the

---

[1] Ind. Evidence Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

burden of demonstrating how, in light of all the evidence in the case, the error's probable impact undermines confidence in the outcome of the proceeding below. *See Mason v. State*, 689 N.E.2d 1233, 1236-1237 (Ind. 1997); [Edward W. Najam, Jr. & Jonathan B. Warner, *Indiana's Probable-Impact Test for Reversible Error*, 55 Ind. L. Rev. 27,] 50-51 [(2022)]. Importantly, this is not a review for the sufficiency of the remaining evidence; it is a review of what was presented to the trier of fact compared to what should have been presented. And when conducting that review, we consider the likely impact of the improperly admitted or excluded evidence on a reasonable, average jury in light of all the evidence in the case. *See Tunstall v. Manning*, 124 N.E.3d 1193, 1200 (Ind. 2019). Ultimately, the error's probable impact is sufficiently minor when—considering the entire record—our confidence in the outcome is not undermined.

*Hayko v. State*, 211 N.E.3d 483, 492 (Ind. 2023), *reh'g denied*, *cert. pending*.

[17] The record reveals that the State introduced the arrest warrant to show Kendall's motive. We cannot say that State's Exhibit 2 was not relevant or that the probative value of the exhibit was substantially outweighed by the danger of unfair prejudice. Further, the probable impact of any error in admitting the arrest warrant, in light of all the evidence in the case, is sufficiently minor so as not to affect Kendall's substantial rights. Reversal is not required on this basis.

II.

[18] The next issue is whether the evidence was sufficient to support Kendall's conviction for identity deception as a level 6 felony. Kendall argues that the statute requires that he profess to be another person and the State presented no evidence that Tyler Cliver was an actual person. He asserts the State must

establish that he used the identifying information of "a real person, natural or juridical" and cites *Brown v. State*, 868 N.E.2d 464 (Ind. 2007), and *Duncan v. State*, 23 N.E.3d 805 (Ind. Ct. App. 2014), *trans. denied*. Appellant's Brief at 9.

[19] In *Brown v. State*, Richard Carlos Brown, pretending to work for a radio station, telephoned at least three adult men and falsely informed them of a radio contest in which they could each win a new car or cash if they would drive from their places of employment to a particular address (which happened to be Brown's residence), enter and remove all of their clothes, and exchange them for a T-shirt. 868 N.E.2d at 466. Each of the men appeared at Brown's home, and two of the men satisfied the fictitious contest requirements but received no prize. *Id.* Each man contacted the radio station and discovered that it had no such employee and was not sponsoring any such contest. *Id.* Brown was convicted on three counts of identity deception as class D felonies. *Id.*

[20] On appeal, Brown argued that the evidence was insufficient to establish the elements of the identity deception charges because there was no evidence that he used the identifying information of a particular individual. *Id.* at 469. Each of the three counts of identity deception charged that Brown "did knowingly use the identifying information of another person, namely Radio Now (93.1), without the other person's consent and with the intent to harm or defraud another person, . . . and/or profess to be another person, that is: an agent of Radio Now (93.1)." *Id.* At that time, Ind. Code § 35-43-5-3.5(a) provided:

> [A] person who knowingly or intentionally . . . uses the identifying information of another person:

(1) without the other person's consent; and

(2) with intent to:

> (A) harm or defraud another person;
>
> (B) . . .; or
>
> (C) profess to be another person;

commits identity deception, a Class D felony.

*Id.*

The Court held:

> For the purposes of this provision, and as relevant to the charged offense, the phrase "identifying information" is specifically defined to mean "information that identifies an *individual,* including an *individual's* . . . name, address, date of birth, place of employment, employer identification number, mother's maiden name, Social Security number, or any identification number issued by a governmental entity . . ." Ind. Code § 35-43-5-1(h) (2004) (emphasis added) (current version at Ind. Code § 35-43-5-1(i)). The word "individual" is commonly understood to refer to a single human being,[2] in contrast to "person," which can mean either an individual human being or a corporation or other legal entity.[3]

---

[2] The Court included a footnote here which stated:

> *See, e.g.*, American Heritage Dictionary 656 (2d ed. 1985) (defining the noun "individual" to mean: "A single human being considered separately from a group or from society."); Random House College Dictionary 678 (Rev. ed. 1984) (defining the noun "individual" to mean: "a single human being, as distinguished from a group.")

*Brown*, 868 N.E.2d at 469 n.5.

[3] The Court included a footnote here which stated:

In addressing a claim of insufficient evidence, an appellate court considers only the probative evidence and reasonable inferences supporting the judgment to assess whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Whedon v. State*, 765 N.E.2d 1276, 1277 (Ind. 2002). Applying this standard, the trial evidence establishes that the defendant spoke to three people about the phony contest, each time identifying himself as a representative of the radio station, a corporation. And with at least one of the people, the defendant claimed to be "Scott Ross," a representative of the radio station. But this was a fictitious name created by the defendant and did not coincide with any real person.

When construing a penal statute, ambiguous language must be construed strictly against the State and in favor of the accused. *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005). Applying the phrase "identifying information" as defined by the statute, the charge against the defendant required the State to prove that the defendant used *an individual's* name, address, date of birth, or other identifiers, to commit the charged crime. While there was evidence that the defendant used information identifying the corporate radio station without its consent, there was no evidence that he used the name, address, date of birth, or other identifiers of any existing human being in perpetrating his hoax.

Because the evidence does not establish that the defendant committed the offense by using information specifically identifying another individual human being, the evidence is

---

*See, e.g.*, American Heritage Dictionary 925 (2d ed. 1985) (in part defining the noun "person" to mean: "A human being or organization with legal rights and duties."); Random House College Dictionary 990 (Rev. ed. 1984) (in part defining the noun "person" to mean: "a human being, a group of human beings, a corporation, an estate, or other legal entity recognized by law as having rights and duties.")

*Brown*, 868 N.E.2d at 470 n.6.

insufficient to prove all of the elements of the charged crimes of identity deception.

*Id.* at 469-470.

[22] In *Duncan v. State*, Christopher Duncan identified himself as George F. Walker during a traffic stop. 23 N.E.2d at 808. He later identified himself as "George Walker, Jr." and gave a date of birth of April 6, 1967, during the book-in procedure. *Id.* Duncan was convicted of identity deception as a class D felony. *Id.* at 809.

[23] On appeal, Duncan argued that the State presented insufficient evidence to support his conviction. *Id.* at 812. This Court observed:

> In order to convict Duncan of identity deception as charged, the State was required to prove that Duncan
>
> knowingly or intentionally obtain[ed] . . . or use[d] the identifying information of another person, including the identifying information of a person who is deceased:
>
> (1) without the other person's consent; and
>
> (2) with intent to . . .
>
> (C) profess to be another person[.]

*Id.* (quoting Ind. Code § 35-43-5-3.5). The Court observed that "Identifying information" was defined in relevant part as "information that identifies a person, including a person's . . . name, address, date of birth, place of employment, employer identification number, mother's maiden name, Social

Security number, or any identification number issued by a governmental entity[.]" *Id.* (quoting Ind. Code § 35-43-5-1(i)). We discussed *Brown* and held:

> Shortly after our Supreme Court's decision in *Brown v. State*, the General Assembly amended the definition of "identifying information" to replace the word "individual" with the word "person." I.C. § 35-43-5-1. It seems likely to us that the legislature did so in response to *Brown*, and for the specific purpose of bringing corporations and other legal entities within the statute's ambit. *See Brown v. State*, 868 N.E.2d at 469-70 (explaining that person may refer to "either an individual human being or a corporation or other legal entity" (footnote omitted)). But we do not believe that this alters our Supreme Court's holding that in order to support an identity deception conviction, the State must establish that the defendant used the identifying information of a real person, whether natural or juridical. Indeed, the plain language of the identity deception statute requires the knowing or intentional use of the identifying information "of another person." I.C. § 35-43-5-3.5. As our Supreme Court explained in *Brown*, the identity deception statute does not criminalize the use of a fictitious name.
>
> The State does not dispute that there was no evidence presented that George Frederick Walker was a real person. Instead, the State argues that it was not necessary for the State to present such evidence. Specifically, relying on subsection I.C. § 35-43-5-3.5(d), which provides that "it is not a defense in a prosecution under [the identity deception statute] that no person was harmed or defrauded", the State argues that the legislature did not intend to limit convictions only to cases in which an individual was actually harmed. We do not disagree with the State's assertion, but it does not alter our conclusion. While the statute clearly does not require actual harm to any person, it does require the use of an actual person's identifying information. We also note that this language was part of the statute at the time our Supreme

Court decided *Brown*, and the court apparently did not interpret it in the manner urged by the State.

The State argues further that Duncan's conduct in giving a false name should be criminalized because it "ran the risk of impeding the police investigation and the State's prosecution" and the "practice of obstructing the course of justice is one which society has an interest in stemming." *Appellee's Brief* at 21. This may be true, but it is not our prerogative as an appellate court to identify and criminalize undesirable behavior; such policy decisions are reserved for the legislative branch of our state government. This court is bound by the language of the statute as written and our Supreme Court's precedent. Moreover, we note that the identity deception statute is found in article 43 of Indiana's criminal code, which is titled "Offenses Against Property." It is therefore apparent to us that the identity deception statute is directed toward potential fraud and property crimes and not false reporting or obstruction of justice. Whether Duncan's conduct might have been chargeable under another statute is not an issue before us.

In this case, Duncan used the name George Frederick Walker, George Walker, Jr., and/or George F. Walker, and gave a birth date of April 6, 1967. The state presented no evidence to establish that this information "coincide[d] with any real person." *See Brown v. State*, 868 N.E.2d at 470. In other words, the State presented no evidence to support a conclusion that Duncan knowingly or intentionally used the identifying information of "another person." I.C. § 35-43-5-3.5. Accordingly, the State presented insufficient evidence to support Duncan's identity deception conviction. We therefore reverse that portion of the trial court's judgment and remand with instructions to vacate the identity deception conviction and the sentence imposed thereon.

*Id.* at 813-814.

[24] The legislature amended Ind. Code § 35-43-5-3.5(a) effective July 1, 2021, which now provides that "a person who, with intent to harm or defraud another person, knowingly or intentionally obtains, possesses, transfers, or uses identifying information *to profess to be another person*, commits identity deception, a Level 6 felony."[4] (Emphasis added). The legislature amended Ind. Code § 35-43-5-1(i) effective July 1, 2021, such that the statute now provides in part:

> "Identifying information" means information, *genuine or fabricated*, that identifies *or purports to identify* a person, including:
>
> > (1) a name, address, date of birth, place of employment, employer identification number, mother's maiden name, Social Security number, or any identification number issued by a governmental entity;
> >
> > (2) unique biometric data, including a fingerprint, voice print, or retina or iris image . . . .

(Emphases added). Ind. Code § 35-31.5-2-234(a) provides that "'person' means a human being, corporation, limited liability company, partnership, unincorporated association, or governmental entity." Ind. Code § 35-31.5-2-160 defines a "Human being" as "an individual who has been born and is alive."

[25] An examination of the words added by the legislature to Ind. Code § 35-43-5-1(i) reveals that the word "genuine" is generally defined as "[a]ctually

---

[4] Ind. Code § 35-43-5-3.5(d) provides: "It is not a defense in a prosecution under subsection (a) or (b) that no person was harmed or defrauded."

possessing the alleged or apparent attribute or character," and "[n]ot spurious or counterfeit; authentic." AMERICAN HERITAGE DICTIONARY 735 (4th ed. 2006). "Genuine" is also defined as "authentic or real; having the quality of what a given thing purports to be or to have" and "free of forgery or counterfeiting." BLACK'S LAW DICTIONARY 801 (10th ed. 2014). The word "fabricate" is generally defined as "[t]o make; create" and "[t]o concoct in order to deceive: *fabricated an excuse*." AMERICAN HERITAGE DICTIONARY 632 (4th ed. 2006). "Fabricate" is also defined as "[t]o invent, forge, or devise falsely" and "[t]o fabricate a story is to create a plausible version of events that is advantageous to the person relating those events. The term is softer than *lie*." BLACK'S LAW DICTIONARY 708 (10th ed. 2014). "Fabricated evidence" is defined generally as "[f]alse or deceitful evidence that is unlawfully created, usu. after the relevant event, in an attempt to achieve or avoid liability or conviction." *Id.* at 675. The word "purport" is generally defined as "[t]o have or present the often false appearance of being or intending; profess." AMERICAN HERITAGE DICTIONARY 1423 (4th ed. 2006). "Purport" is also defined as "[t]o profess or claim, esp. falsely; to seem to be." BLACK'S LAW DICTIONARY 1431 (10th ed. 2014).

[26] We note that, prior to the amendment effective July 1, 2021, Ind. Code § 35-43-5-1(i) provided in part:

> "Identifying information" means information that identifies a person, including *a person's*:

> (1) name, address, date of birth, place of employment, employer identification number, mother's maiden name, Social Security number, or any identification number issued by a governmental entity;
>
> (2) unique biometric data, including *the person's* fingerprint, voice print, or retina or iris image . . . .

(Emphasis added). We note that the italicized language above was deleted by the July 1, 2021 amendment, *see* Pub. L. No. 174-2021 (eff. July 1, 2021), which indicates that the legislature intended to no longer require that the name be related to a real person. Based upon the amendment to Ind. Code § 35-43-5-3.5(a), which criminalized the use of identifying information "to profess to be another person" and the amendment to Ind. Code § 35-43-5-1(i) defining identifying information as "information, genuine or fabricated, that identifies or purports to identify a person," we cannot say that the current version of the statute requires that the identifying information must coincide with any real person or an existing human being. Even assuming that the current version of the statute requires that the identifying information coincide with a real person, we note that, when asked what he discovered when he ran the name Tyler Cliver, Patrolman Aerne answered: "That the date of birth did not match." Transcript Volume II at 202. The reasonable inference is that Patrolman Aerne found a real person named Tyler Cliver.[5] Based upon the record, we conclude

---

[5] We note that Kendall's argument is limited to whether the statute requires that he use the identifying information of a real person and he does not further develop an argument that he did not intend to harm or defraud another person.

the State presented evidence of a probative nature from which a reasonable trier of fact could find Kendall guilty of identity deception as a level 6 felony.

III.

[27] The next issue is whether the identity deception statute violated the Proportionality Clause of Article 1, Section 16 of the Indiana Constitution. Kendall argues that the crime of identity deception under Ind. Code § 35-43-5-3.5, as applied to him, violates the Proportionality Clause of Article 1, Section 16 of the Indiana Constitution. He asserts that he was convicted of identity deception as a level 6 felony and that his conduct of giving a false name to a police officer could also support a prosecution for false informing as a class B misdemeanor pursuant to Ind. Code § 35-44.1-2-3(d)(1). He contends that there are no additional facts present here that warrant prosecuting his conduct under the identity deception statute versus the false informing statute.

[28] Article 1, Section 16 provides that "[a]ll penalties shall be proportioned to the nature of the offense." It is violated only when the criminal penalty is not graduated and proportioned to the nature of the offense. *Knapp v. State*, 9 N.E.3d 1274, 1289 (Ind. 2014), *cert. denied*, 574 U.S. 1091, 135 S. Ct. 978 (2015). Though we "cannot set aside a legislatively sanctioned penalty merely because it seems too severe," Article 1, Section 16 requires us to review whether a sentence is not only within statutory parameters, but also constitutional as applied to the particular defendant. *Id.* at 1290. "A sentence violates the Proportionality Clause when 'offenses with identical elements [are] given

different sentences.'" *Johnson v. State*, 103 N.E.3d 704, 707 (Ind. Ct. App. 2018) (quoting *Poling v. State*, 853 N.E.2d 1270, 1276-1277 (Ind. Ct. App. 2006), *reh'g denied*), *trans. denied*.

[29] Ind. Code § 35-44.1-2-3 governs the offense of false reporting or informing and provided at the time of the offense:

> (d) A person who:
>
> > (1) gives:
> >
> > > (A) a false report of the commission of a crime; or
> > >
> > > (B) false information to a law enforcement officer that relates to the commission of a crime;
> >
> > knowing the report or information to be false;
>
> > * * * * *
>
> commits false informing, a Class B misdemeanor.

[30] Ind. Code § 35-43-5-3.5(a) provides that "a person who, *with intent to harm or defraud another person*, knowingly or intentionally obtains, possesses, transfers, or *uses identifying information to profess to be another person*, commits identity deception, a Level 6 felony." (Emphases added). Thus, the statute governing identity deception includes elements not contained in the statute governing false informing. Accordingly, we conclude that the crime of false informing, which requires no such intent or use of identifying information, is distinguishable from the crime of identity deception. We do not find a violation of Article 1, Section 16.

For the foregoing reasons, we affirm the trial court.

Affirmed.

Tavitas, J., and Foley, J., concur.